**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 26-cv- 2786 |
| CHICAGO SOUTH LOOP HOTEL OWNER, LLC, | ) | |
| | ) | Honorable Edmond E. Chang |
| | ) | |
| Debtor-in-Possession. | ) | Appeal from Bankruptcy Case |
| | ) | 25-12829 |

# APPELLEE'S BRIEF OF LOUIS DODD

**Counsel to Appellee Louis Dodd**

RAINES FELDMAN LITTRELL LLP
Mark S. Melickian (Atty. No. 6229843)
30 N. LaSalle St., Suite 3100
Chicago, IL 60602
Telephone: 312-704-2174
Email: mmelickian@raineslaw.com

# TABLE OF CONTENTS


STATEMENT OF FACTS……………………………………………………..…..……… 1
.
ARGUMENT…………………………………………………………………..…………. 4

I. THE BANKRUPTCY COURT DID NOT ERR IN RULING THAT TODD HANSEN WAS NOT AUTHORIZED TO ACT ON BEHALF OF THE DEBTOR……………………………………………………………….……… 4

II. THE BANKRUPTCY COURT DID NOT ERR IN DISMISSING THE BANKRUPTCY CASE BASED ON AUTHORITY WHEN IT WAS AN INVOLUNTARY …FILING……………………..…………………………………….…..... 11

III. THE BANKRUPTCY COURT DID NOT ERR IN DISMISSING THE BANKRUPTCY CASE FOR FAILURE TO FILE REPORTS AND A PLAN OF REORGANIZATION……………………………..…………..………. 12

CONCLUSION………………………………………………………………………… 12




10825588.1

# TABLE OF AUTHORITIES

*In re Chicago South Loop Hotel Owner LLC*, 2023 WL 3643533 at *3 (Bankr. N.D. Ill. May 24, 2023) ………………………………………………………………….. 1, 3

*Du Page Forklift Sales, Inc. v. Material Handling Servs., Inc.*, 195 Ill. 2d 71, 77 (2001)………………………………………………………………………………….. 9

Appellee Louis Dodd ("**Appellee**" or "**Dodd**") accepts the recitation of appellant Chicago South Loop Hotel Owner, LLC ("**Appellant**," "**CSLHO**," or the "**Debtor**") as set forth in the sections in Appellant's opening brief entitled Statement of the Basis of Appellate Jurisdiction, Statement of Issues Presented, Standard of Review, and Statement of the Nature of the Case, Course of Proceedings and Disposition of Review.

Dodd accepts Appellant's Statement of Facts except as herein supplemented or contested, as set forth below.

## STATEMENT OF FACTS

The order of dismissal before this Court on appeal is the second dismissal of a chapter 11 case by Appellant based on the manager's lack of corporate authority over Appellant. The first dismissal occurred May 24, 2023. *See In re Chicago South Loop Hotel Owner LLC*, 2023 WL 3643533 at *3 (Bankr. N.D. Ill. May 24, 2023) ("**South Loop 1**") (R. 5-2, 99). In South Loop 1, Bankruptcy Judge Deborah Thorne held that Todd Hansen, the purported manager of Appellant, in fact held no authority, and that the governance documents and events that led to his alleged appointment in that role were invalid under the entity's Operating Agreement. Id., 2023 WL at *3 (R. 5-2, 100-101).

It is undisputed that, prior to July of 2018, Vickie White ("**White**") and Dodd owned 42.5% each of CSLH, with Vivian Murphy ("**Murphy**") and Astrid Cooper ("**Cooper**") collectively owning the other 15%. Docket 13, Appellant's Brief, p. 6. At that time, White and Dodd were indisputably co-managers, and under the Operating Agreement, all decisions and material actions taken by or on behalf of CSLH – including amendments to the Operating Agreement - required the consent of both co-managers. Operating Agreement, § 10.1 (R. 5-2, 320). In addition, under the Operating Agreement, transfers of full membership interests

(including voting rights) required the consent of all other members. Operating Agreement, § 13.1 (R. 5-2, 319); see also South Loop 1 Opinion, at * 1 (R. 5-2, 99). This applied to internal transfers among members as well as transfers to third parties. The Restrictive Stock Agreement effective March 14, 2007 (the "**RSA**") established a structure for the transfer of membership interests by members – essentially, granting the LLC and then the members a right of first refusal, but did not amend the Operating Agreement's requirement that the consummation of a transfer of a membership interest requires the consent of all other members. (R. 5-2, 336-341).

As described in more detail in Dodd's pleadings in the bankruptcy case below, by a purported amendment to CSLH's Operating Agreement dated July 18, 2018, White, Murphy, and Cooper initiated what amounted to a coup, claiming to remove Dodd as manager for "cause" and amending the Operating Agreement to attempt to give White, Murphy, and Cooper more flexible control over management and membership issues, including transfers of membership interests. (R 5-3, 43-44). This background is not included in Appellant's statement of facts.

In South Loop 1, the Bankruptcy Court examined the chain of governance events, commencing with the July 18, 2018 amendments to the Operating Agreement, that allegedly led to Todd Hansen's appointment as manager with authority over the debtor and held that they were all illegitimate. South Loop 1, 2023 WL 3643533 at *3 (R. 5-2, 101). The Bankruptcy Court found that Dodd's removal as co-manager in 2018 was improper and void, that his consent was still required for certain relevant corporate acts, including management realignment, and that consent was not obtained. The Bankruptcy Court further concluded that the subsequent transfer of interests between White, Murphy and Cooper could not have occurred, as claimed, without Dodd's consent, which had not been obtained. In sum, Todd Hansen's alleged appointment was

the fruit of a poisonous tree of illegitimate governance changes and membership transfers. *See generally* Dodd Reply (R. 5-2, 302-308).

In the instant matter, upon the conversion of the involuntary to a voluntary chapter 11 case (referred to herein as "**South Loop 2**"), Judge Thorne was faced with the same question – whether Todd Hansen held sufficient corporate authority as manager or otherwise over Appellant or its parent entity, Chicago South Loop Hotel, LLC ("**CSLH**" or "**Parent**"), which is Appellant's sole member, to make decisions for Appellant as debtor and debtor in possession. These decisions would include authorizing pleadings, signing court-required documents, and directing counsel for the Debtor. After further development of the record, Judge Thorne came to the same conclusion she reached in South Loop 1: Todd Hansen was not a duly appointed manager of CSLH and had no authority or control over Appellant. (Opinion, R. 5-4, 257; Order, R. 5-4, 268). Specifically, she held that, notwithstanding the Parties' substantial supplementing of the record at Appellant's request, and as described below, "[n]o additional authority has been furnished demonstrating that Todd Hansen holds authority to direct the Debtor in this second case." (R. 5-4, 260).

The order to supplement was issued at the hearing held on Dodd's motion to dismiss on January 28, 2026, after briefing had concluded. During that hearing, Appellant's counsel suggested that there were state court pleadings and orders that were not yet of record but would clarify Todd Hansen's authority. In particular, counsel stated that there may be a "settlement agreement" to which Dodd was a party that was dispositive. In addition to suggesting that the Bankruptcy Court lacked a fully representative record as of January 28, 2026, Appellant's counsel suggested that the record was deficient during South Loop 1, when Appellant was represented by different counsel. *Id.*, (R 5-3, 84 et seq.). In response, Judge Thorne asked the parties to further supplement the record beyond the briefing and arguments before she ruled. Transcript of 1/28/26

Hearing (R. 5-3, 75-109). The Debtor, Dodd, and secured lender Hospitality Structured Funding IV, LLC ("**Hospitality**") subsequently filed individual supplemental briefs and exhibits, which the Bankruptcy Court considered prior to issuing the dismissal order and related opinion. *See* Debtor Supplement (R. 5-2, 429-446, R. 5-3, 1-64); Dodd Supplement (R 5-3, 65-128, R. 5-4, 1-165); Hospitality Supplement (R. 5-4, 184-236).

## ARGUMENT

### I. THE BANKRUPTCY COURT DID NOT ERR IN RULING THAT TODD HANSEN WAS NOT AUTHORIZED TO ACT ON BEHALF OF THE DEBTOR.

Appellant contends that the Bankruptcy Court erred by failing to properly consider and grant full faith and credit to the outcome of litigation commenced in Cook County Circuit Court (Chancery) prior to the events of South Loop 1. According to Appellant, the outcome of that litigation (Case No. 19 CH 10966, the "**2019 Chancery Action**") amounted to a ratification of membership interest transfers by and among Dodd's CSLH co-members (White, Murphy, and Cooper, in which White allegedly purchased Murphy and Cooper's collective 15% membership interest, resulting in White allegedly owning 57.5% of CSLH. White subsequently purportedly sold substantially all of her membership interests to a newly created member/manager of CSLH called Chicago South Loop Holdings, LLC ("**Holdings**"), giving Holdings a majority interest in CSLH. Holdings, in turn, as the putative majority owner, allegedly appointed Todd Hansen as manager of CSLH, which effectively gave Hansen authority over Appellant, CSLH's wholly owned subsidiary.

The 2019 Chancery Action may have preclusive effect on parties that materially participated in that litigation, but solely as to the issues that were, in fact, litigated and resolved

either by agreement or by judgment. There is no preclusive effect on rights that were not adjudicated in that proceeding.

The 2019 Chancery Action was commenced on September 23, 2019 by White against Murphy, Cooper and CSLH, later expanded to include White as a counterplaintiff/defendant and to add Dodd, Sector Corporation, Premier Hospitality, Inc., and Paris Fountis as "third party defendants." *See generally* Complaint (Dodd Supplement, Exh. B; R. 5-3, 112 et seq); Counterclaim (Dodd Supplement, Exh. C; R. 5-4, 11 et seq). Several third-party defendants, including Dodd, were added as nominal parties in the Counterclaim.

While Dodd as well as three others were nominally joined as "third party" defendants, Dodd and the other third-party defendants were ancillary to the disputes between White, Murphy, and Cooper that initiated the litigation and counterclaims. Dodd never filed a formal appearance or a pleading in the case. (Dodd Supplement, Exh. G; R. 5-3, 100-121). Dodd did, however, expressly reserve his rights and arguments under CSLH's operative documents, in a Stipulation and Agreed Order entered February 4, 2020, several months into 2019 Chancery Action, with the intent of allowing the underlying asset (the hotel that is the sole asset of Appellant) continue to operate during the litigation, with all parties' rights reserved. (Dodd Supplement, Exh. D; R 5-4, 46-49).

Several provisions of the Stipulation and Agreed Order indicate that Dodd's arguments and rights remained preserved as of that date:

> Recital I – "Dodd's dismissal as a co-manager is disputed by Dodd. Nothing in this Agreed Order shall be deemed a final determination of Dodd's status as co-manager."
>
> Recital J – noting Dodd's objection to Premier's management of the hotel.

Recital M – "The Parties continue to dispute who has authority to operate the LLC and the Hotel."

Decretal para 8 – Full reservation of rights by all parties.

Approximately a year later, the case was dismissed as to all parties pursuant to an order entered January 20, 2021 (the "**Chancery Action Dismissal Order**"). (Dodd Supplement, Exh. E, R. 5-4, 51). The Chancery Action Dismissal Order is a simple order that provides for dismissal with prejudice of the litigation and provides that the Court "shall retain jurisdiction of this cause to enforce the settlement agreement between the parties." *Id*.

The "settlement agreement" referenced in the Chancery Court Dismissal Order is not further described in the order, is not attached to the order, and is not otherwise docketed in connection with the dismissal. There is no evidence in the record that any so-called "settlement agreement" was presented to the Chancery Court prior to entry of the Chancery Court Dismissal Order. There is no evidence in the record that a settlement agreement was circulated for review and approval by any party outside of the settling parties. There is no evidence in the record that any of the parties' other rights and issues preserved in the Stipulation and Agreed Order were adjudicated or otherwise addressed in the litigation prior to entry of the Chancery Court Dismissal Order.

Nearly two and half years later, Murphy and Cooper filed a Motion to Enforce Settlement Agreement and asked the Chancery Court to reopen the case to enforce the settlement agreement against White, who was alleged to have breached an agreement to pay Murphy and Cooper. (Dodd Supplement, Exh. F, R. 5-4, 54-58). Dodd was not a party to the Motion to Enforce.

Paragraph 3 of the Motion to Enforce references the Chancery Court Dismissal Order and provides that the so-called "settlement" agreement to be enforced is the CSLH Membership

Interest Purchase Agreement (the "**MIPA**") that was attached to the Motion to Enforce as Exhibit A. (R. 5-4, 55, 59-67). The MIPA was executed by White, Murphy and Cooper on December 30, 2020, less than a month prior to dismissal of the litigation. In the MIPA, White purported to purchase Murphy's and Cooper's interests in CSLH, bringing White's purported membership interest to 57.5%. (R. 5-4, 56). No other parties and no other rights are addressed in the MIPA.

In the Motion to Enforce, Murphy and Cooper sought money judgments against White. (R. 5-4, 58). No other claims are pursued. Approximately four months after commencement, the Chancery Court entered money judgments against White in favor of Murphy and Cooper for amounts owed under the MIPA. (R. 5-3, 39).

The MIPA is not an agreement that impairs, alters, concedes, or waives Dodd's rights as a member or manager. Dodd was not a party to the MIPA. Dodd was not a party to the Motion to Enforce. The Judgment Order against White (R. 5-3, 39) makes no findings of fact or conclusions of law beyond the money judgments, and does not reference Dodd in the body or the caption. There are no other findings or conclusions from that litigation in the record on appeal. On the available record, the last order in the 2019 Chancery Action that references Dodd indicates that arguments about Dodd's manager status, and thus the status of his authority over Appellant, remained fully preserved. (R. 5-4, 46-49).

Appellant claims that the Chancery Court Dismissal Order (R. 5-4, 96-97) and the two orders entered to resolve the Motion to Enforce (R. 5-3, 37; R. 5-3, 39) (collectively, the "**Chancery Court Judgment Orders**") ratify the alleged membership rights transaction conducted between White, Murphy, and Cooper in the MIPA and ratify White's subsequent ownership of 57.5% of the full membership interest in CSLH, and that these outcomes are binding on other parties, including Dodd. Appellant goes further, claiming that, prior to entry

of either the Chancery Court Dismissal Order or the Chancery Court Judgment Orders, Dodd waived any rights he may have had as a member to consent, or not, to a membership transfer by the other members by failing to exercise on a right of first refusal, or ROFR, to purchase Murphy and Cooper's interests.

During the course of the 2019 Chancery Court action, White, Murphy and Cooper apparently began settlement discussions, from which emerged a proposed transaction in which White would purchase the membership interests of Murphy and Cooper. Pursuant to the RSA, Dodd received information on this proposed transaction and an opportunity to participate in the transfer. Appellant Brief, p. 3. Dodd does not dispute that he received the proposal.

Dodd neither pursued that transaction nor consented to the transfer of Murphy and Cooper interests to White. It does not follow, however, that under either the Operating Agreement (R. 5-2, 310-334) or the RSA (R. 5-2, 336-341), a member waives any membership rights and entitlements under the Operating Agreement by abstaining from the purchase of another member's interests when offered. The fact remains that Dodd's consent was required for Murphy and Cooper to sell their full membership interests to White, and Dodd's consent was not obtained.

As pointed out by Dodd in the proceedings below, whatever rights were at issue between White, Murphy, and Cooper in the 2019 Chancery Action were necessarily limited by the Operating Agreement and RSA to a transfer of economic rights, not full membership rights. Dodd Reply, ¶¶ 5 – 19 (R. 5-2, 302); Operating Agreement, § 13.1 (R. 5-2, 319). As set forth in more detail in Dodd's Reply, members may only transfer their full membership interest, including voting rights, with the consent of 100% of the other members. A member who wishes to sell their membership interest but does not obtain that consent may still sell their passive economic interest to another member or a third party, but that transfer does not include the



10825588.1

privileges of full membership, including voting rights. The transferee obtains the economic stake but does not, in fact, become a "member" with the rights and privileges that entails – including the right to select or vote on a manager or consent or vote on any acts of the manager.

There is no evidence in the record that the Chancery Court was presented with the MIPA (or any similarly purported "settlement agreement") for review or approval prior to entering the Chancery Court Dismissal Order in January of 2021. That court made no findings of fact or conclusions of law with respect to the claims pursued by White, Murphy, and Cooper in litigation, nor any findings or conclusions with respect to the terms of the settlement or the nature, scope or validity of the MIPA. The matter was simply dismissed at the request of the primary litigants (White, Murphy, Cooper).

When the MIPA was later presented to the same Chancery Court in 2023 in the Motion to Enforce, the plaintiffs (Murphy and Cooper) did not pursue any declaratory relief with respect to the nature, scope, or validity of their respective interests in CSLH. The issues presented in the Motion to Enforce were limited to the enforcement of the economic claims of Murphy and Cooper against White, as indicated in the Chancery Court Judgment Orders.

In sum, the findings and conclusions arising from the 2019 Chancery Action that Appellant claims give rise to collateral estoppel and reversible error were not as Appellant describes. The Chancery Court did <u>not</u> find "that the transfer of Murphy's and Cooper's interest to White were valid." Appellant's Brief, page 7. There is no evidence that the Chancery Court made any findings of fact or conclusions of law prior to entering the Chancery Court Dismissal Order. Furthermore, the subsequent Motion to Enforce (R. 502, 436 et seq) only seeks entry and enforcement of money judgments pursuant to promissory notes executed by White in favor of Murphy and Cooper in connection with the MIPA.

As a corollary to the collateral estoppel argument, Appellant also contends that Dodd had an obligation to act in the 2019 Chancery Action to stop White, Murphy, and Cooper from entering into whatever ownership interest transactions they wrongfully believed they could consummate under the Operating Agreement and RSA. He had no such obligation, and no reason to pursue it further in that forum, in the face of a voluntary dismissal as against all parties. At that point, Dodd had fully reserved his rights, memorialized in a court order, and those rights remained preserved as of dismissal.

Dodd agrees that collateral estoppel may apply where "(1) the prior adjudication decided the same issue now before the current court; (2) a final judgment on the merits exists; and (3) the party against whom estoppel operates participated as a party or in privity with a party to the prior adjudication. *Du Page Forklift Sales, Inc. v. Material Handling Servs., Inc.*, 195 Ill. 2d 71, 77 (2001)." (Appellant's Brief, p. 7). However, even assuming that Dodd's preliminary receipt of an offer to purchase membership interests (which he declined) and his role as a third party litigant in the 2019 Chancery Action satisfies the third prong, the first two prongs are not met. The Chancery Court did not rule on the membership issues presented in this matter, and the Chancery Court Judgment Orders resolved only the narrow issues raised by the Motion to Enforce, the money judgments sought by Murphy and Cooper.

In sum, there is nothing in the record of the 2019 Chancery Action, and nothing in the record on appeal about the 2019 Chancery Action, that indicates that the Chancery Court issued findings or conclusions or otherwise ruled on the legitimacy or nature of the MIPA transaction. As a result, the 2019 Chancery Action has no "full faith and credit" impact on the issue presented by Appellant in the instant case. If there is any full faith and credit impact to the outcome of the

2019 Chancery Action, it is solely as to the economic rights between White, Murphy, and Cooper, and it is limited to the extent of those economic rights.

Dodd's status as a manager is not before this Court on appeal. However, his status as a holder of a 42.5% full membership interest in Appellant is not in dispute. Under the Operating Agreement, other members could only transfer full membership interests with his consent. He did not give consent to the transfer of Murphy's and Cooper's interests to White, which limits that transfer (if otherwise valid) to Murphy's and Cooper's economic stakes, without voting rights.

It follows that White's subsequent alleged transfer of substantially all of her interests to Holdings – again, without Dodd's affirmative consent – would be, at best, limited to a transfer of the economic interests held by White in CSLH to Holdings. Holdings would not become a member with the rights and privileges of a member, merely a passive investor. Without a true membership interest, Holdings had no authority to appoint or select or approve a manager and could not select or appoint Todd Hansen.

The Bankruptcy Court drew this conclusion in the proceeding below, just as it had in South Loop 1. The additional record developed in this matter supported dismissal.

## II. THE BANKRUPTCY COURT DID NOT ERR IN DISMISSING THE BANKRUPTCY CASE BASED ON AUTHORITY WHEN IT WAS AN INVOLUNTARY FILING

Appellant contends that the filing of an involuntary proceeding against a corporate debtor insulates that corporate debtor from the requirement that a corporate debtor in possession act under the control of an authorized party while operating as a debtor in possession in bankruptcy. Appellant cites no authority for this proposition, because there is no authority for this proposition.

### III. THE BANKRUPTCY COURT DID NOT ERR IN DISMISSING THE BANKRUPTCY CASE FOR FAILURE TO FILE REPORTS AND A PLAN OF REORGANIZATION

Appellee concedes that Appellant filed monthly operating reports (although not timely) and that the deadline for filing a chapter 11 plan had not passed when the case was dismissed. Appellant concedes, however, that "[t]he Debtor would not be able to proceed with a plan of reorganization based on the ruling the Bankruptcy Court made regarding corporate authority[.]" Appellant Brief, p. 9. The threshold and core ruling that is now on appeal – lack of corporate authority to operate as a debtor in possession – eliminated the possibility that Appellant could propose and confirm a chapter 11 plan within the time period proposed in the Bankruptcy Rules or any time allowed by the Bankruptcy Court. In other words, it was not error for the Bankruptcy Court to conclude that Appellant could not timely propose a chapter 11 plan when the gravamen of the court's ruling eliminated the possibility that Appellant could propose any chapter 11 plan.

## CONCLUSION

For the foregoing reasons, Dodd respectfully requests that the District Court affirm the findings and conclusions of the Bankruptcy Court.

June 10, 2026

**RAINES FELDMAN LITTRELL LLP**

By: /s/ Mark S. Melickian

Mark S. Melickian (Atty. No. 6229843)
30 N. LaSalle St., Suite 3100
Chicago, IL 60602
Telephone: 312-704-2174
Email: mmelickian@raineslaw.com