# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISCTRIC OF ILLINOIS
# EASTERN DIVISION

In re:

CHICAGO SOUTH LOOP HOTEL
OWNER, LLC,

          Debtor-in-Possession

Case No. 26-cv-2786

Honorable Edmond E. Chang

Appeal from Bankruptcy Case
25-12829

## <u>APPELLANT CHICAGO SOUTH LOOP HOTEL OWNER, LLC'S REPLY BRIEF</u>

<u>Counsel to Appellant</u>
Goldstein & McClintock LLLP
Jeffrey C. Dan (Atty. No. 6242750)
Harley J. Goldstein (Atty. No. 6256010)
111 W. Washington Street, Suite 1221
Chicago, IL 60602
Telephone: (312) 337-7700
jeffd@goldmclaw.com
harleyg@goldmclaw.com

## TABLE OF CONTENTS

ARGUMENT ……………………………………………………………………………. 1

I. THE BANKRUPTCY COURT ERRED BY DISMISSING THE CASE RATHER THAN CONSIDERING THE REMEDIES PROVIDED BY CHAPTER 11 ...… 1

II. THE BANKRUPTCY COURT'S RELIANCE ON SOUTH LOOP 1 WAS MISPLACED ...………………………………………………………….. 4

III. THE RECORD DOES NOT SUPPORT THE BANKRUPTCY COURT'S FINDINGS REGARDING REORGANIZATION OR TRUSTEE APPOINTMENT ..………………………………………………………… 6

IV. DODD'S CHARACTERIZATIONS OF THE PROCEEDINGS IN THE STATE COURT IS NOT SUPPORTED BY THE FACTS …………………………….. 10

CONCLUSION ………………………………………………………………………...… 12

## TABLE OF AUTHORITIES

**Cases**

*In re Reynoso Vineyards, Inc.*, 2025 Bankr. LEXIS 78 at *6 ....................................................... 1-2

*In re LG Motors, Inc.*, 422 B.R. 110 (Bankr. N.D. Ill. 2009) ......................................................... 2

*In re Spiegel*, 662 B.R. 666, 683-84 (Bankr. N.D. Ill. 2024) ......................................................... 3

*In re LHC, LLC*, 497 B.R. 281, 293 (Bankr. N.D. Ill. 2013) .......................................................... 3

*Savory v. Cannon*, 947 F.3d 409, 418 (7th Cir. 2020) ................................................................... 4

*Allen v. McCurry*, 449 U.S. 90, 96 (1980) ..................................................................................... 4

*In re Calvert*, 913 F.3d 697, 701 (7th Cir. 2019) ...................................................................... 4-5, 7

*Kirk v. Board of Educ.*, 811 F.2d 347, 351-52 (7th Cir. 1987) ...................................................... 5

*In re 1600 Hicks Rd. LLC*, 649 B.R. 172, 182 (Bankr. N.D. Ill. 2023) ........................................ 7

*In re A&F Enters., Inc. II*, 742 F.3d 763, 769 (7th Cir. 2014) ...................................................... 7

*In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989) ..................................................... 9

**Statutes**

11 U.S.C. §1104 ........................................................................................................................ 1, 3, 8

11 U.S.C. §1112 .......................................................................................................................... 1, 3

11 U.S.C. §1112(b)(1) .................................................................................................................... 1

11 U.S.C. §1104(a) ........................................................................................................................ 1

11 U.S.C. §1104(a)(3) .................................................................................................................... 2

11 U.S.C. §1112(b) ............................................................................................................... 2, 6, 10

11 U.S.C. §1104(a)(2) .................................................................................................................... 9

iii

**ARGUMENT**

I.      THE BANKRUPTCY COURT ERRED BY DISMISSING THE CASE RATHER
THAN CONSIDERING THE REMEDIES PROVIDED BY CHAPTER 11.

The Bankruptcy Court identified a serious dispute concerning who possessed authority to act on behalf of Chicago South Loop Hotel, LLC ("CSLH"). Whether that conclusion was correct, however, is only part of the inquiry. The question presented by this appeal is not simply whether there was uncertainty regarding the Debtor's governance. It is whether that uncertainty warranted dismissal of an existing Chapter 11 case notwithstanding the remedies Congress specifically provided for circumstances involving contested authority, competing stakeholder interests, and management dysfunction.

The Bankruptcy Code answers that question through §§ 1104 and 1112. Together, those provisions reflect Congress's recognition that debtors frequently enter Chapter 11 burdened by disputes over ownership. Rather than making dismissal the automatic consequence of such disputes, the Code authorizes the appointment of an independent fiduciary capable of administering the estate while those disputes are resolved. Section 1112(b)(1) expressly requires a court to determine whether dismissal, conversion, or appointment of a trustee is in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1). Section 1104(a) provides the mechanism by which a trustee may be appointed where cause exists or where such appointment otherwise serves those interests. 11 U.S.C. § 1104(a).

Recent decisions applying those provisions underscore the importance of that inquiry. In *In re Reynoso Vineyards, Inc.*, the bankruptcy court rejected a proposed resolution that would have left disputed stakeholders in control of the debtor and concluded that "immediate conversion or dismissal would not serve the best interest of creditors." *In re Reynoso Vineyards, Inc.*, 2025 Bankr. LEXIS 78 at *6. Instead, the court appointed a Chapter 11 trustee, explaining that a trustee

1

appointment may be especially appropriate where the available facts do not permit a reliable determination of whether creditors would be better served by dismissal, liquidation, or continued operation of the business. *Id*. at 7. The court reasoned that an independent fiduciary could investigate competing interests, collect estate assets, evaluate potential claims, and determine whether reorganization remained feasible. *Id*. at 8-12. In the court's words, a trustee could "wade into this morass and find a way through." *Id*. at 8.

The same principle applies here. The Bankruptcy Court concluded that competing claims of ownership and authority prevented the Debtor from functioning through existing management. Memorandum Opinion (R. 5-4, 257, 265). Yet those findings do not explain why continued administration through an independent fiduciary was impossible.

The contrast with *In re LG Motors, Inc*., 422 B.R. 110 (Bankr. N.D. Ill. 2009), is instructive. There, the court found cause under § 1112(b), expressly considered the appointment of a trustee pursuant to § 1104(a)(3), and ultimately concluded that a trustee would not serve creditors' interests because the debtor's underlying business model was no longer viable. *Id*. at 117-18. The debtor had lost the dealer's license on which its operations depended, was liquidating existing receivables rather than generating new business, and lacked any realistic prospect of rehabilitation. *Id*. at 116-18. Under those circumstances, the court determined that a trustee would be unable to solve the debtor's fundamental operational problems and the Debtor's case should be dismissed or converted. *Id*. at 118.

Unlike *LG Motors*, no comparable analysis appears in the dismissal order here. The Bankruptcy Court did not identify a failed business model, the loss of a critical operating asset, or any other structural obstacle that would have rendered trustee oversight futile. Nor did it conclude that an independent fiduciary would be incapable of preserving estate value while the parties'

2

competing claims were resolved. The problem identified by the court was uncertainty regarding authority and control rather than a failed business model.

Other courts applying § 1112 likewise recognize that the inquiry does not end once cause is established. See *In re Spiegel*, 662 B.R. 666, 683-84 (Bankr. N.D. Ill. 2024); *In re LHC, LLC*, 497 B.R. 281, 293 (Bankr. N.D. Ill. 2013). The court must still determine whether creditors and the estate are better served by continued administration under an independent fiduciary. Here, the record contains no meaningful discussion of that question despite the fact that trustee appointment was requested by Dodd as alternative relief and remains the remedy favored by Hospitality, the Debtor's principal secured creditor. (R. 5-4, 257, 265).

The procedural posture of this case further underscores the need for that analysis. This case was commenced by an involuntary petition. (R. 5-2, 13). No party opposed the petition, and the Bankruptcy Court entered an Order for Relief on September 11, 2025. (R. 5-2, 20). By the time Dodd moved to dismiss, a Chapter 11 estate had already been established. No plan had been filed. No trustee had been appointed. No independent fiduciary had been afforded an opportunity to evaluate the Debtor's operations or investigate competing claims of authority. In practical terms, the Chapter 11 process was terminated before the principal remedial Chapter 11 tools could be meaningfully employed.

Ultimately, the Bankruptcy Court may well have been correct that substantial uncertainty existed as to who had authority to act on behalf of CSLH. But that conclusion did not resolve the inquiry required by §§ 1104 and 1112. The relevant question was whether creditors' interests would be better served by terminating the case or by placing the estate under the control of an independent fiduciary. Because the dismissal order contains no meaningful explanation as to why the latter course was inadequate, it cannot stand.

3

II.     THE BANKRUPTCY COURT'S RELIANCE ON SOUTH LOOP 1 WAS
        MISPLACED.

The Bankruptcy Court erred by treating the first Chapter 11 dismissal ("South Loop 1") as dispositive of the authority issues presented in this involuntary Chapter 11 case. Although South Loop 1 addressed authority-related issues, it did not resolve the distinct issue that arose after the entry of the Order for Relief. Prior judgments may be entitled to respect under principles of preclusion and full faith and credit, but those doctrines require careful examination of what was actually decided in the earlier proceeding. The Bankruptcy Court, instead, afforded South Loop 1 controlling effect that exceeded its proper reach.

Federal courts must give state-court judgments the same effect they would receive under applicable state preclusion law. As the Seventh Circuit has explained, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Savory v. Cannon*, 947 F.3d 409, 418 (7th Cir. 2020) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). Likewise, "[f]ederal courts apply the preclusion law of the state where the judgment was rendered." *Id*.

But the existence of a prior judgment does not end the inquiry. To the contrary, the Seventh Circuit has emphasized that courts must carefully identify the precise issues resolved in the earlier proceeding before assigning preclusive effect to that decision. In *In re Calvert*, the court explained that the first step is to "determine with precision what matters actually were decided" in the prior proceeding and that the inquiry "must be grounded in the actual findings and analysis" of the earlier decision. *In re Calvert*, 913 F.3d 697, 701 (7th Cir. 2019). The court rejected an attempt to rely on a prior adjudication where the proponent described the earlier ruling only "at a high level of generality," holding that courts cannot assess the effect of a prior proceeding without a "more precise analysis of what was actually decided." *Id*. at 701-02.

4

The Bankruptcy Court's analysis conflicts with that approach. Rather than identifying the precise issue decided in South Loop 1, the opinion treated the earlier case as broadly resolving future authority disputes involving CSLH. But *Calvert* requires a more precise inquiry.

The Seventh Circuit has recognized that issue preclusion applies only where the issue in the later proceeding is identical to the issue previously litigated and decided. *Id.* at 701 (issue sought to be precluded must be "the same as that involved in the prior litigation" and must have been "actually litigated"). Likewise, Illinois preclusion principles require identity of issues and do not extend prior judgments beyond matters adjudicated. See *Kirk v. Board of Educ.*, 811 F.2d 347, 351-52 (7th Cir. 1987) (recognizing that federal courts must give state judgments only the preclusive effect Illinois courts would give them and emphasizing the need for identity of causes of action and issues).

Here, the issues presented in this involuntary Chapter 11 case were materially different from those addressed in South Loop 1. Most notably, this case arose following the filing of an involuntary petition and the entry of an Order for Relief. (R. 5-4, 257, 259). Once the Order for Relief was entered, the Bankruptcy Court was no longer merely considering whether a bankruptcy case should be commenced. The Court was required to administer an existing bankruptcy estate and determine how to proceed under Chapter 11. That procedural posture is fundamentally different from a dispute concerning authority to commence a voluntary bankruptcy case in the first instance.

Had the Bankruptcy Court undertaken that analysis, it would have recognized that this case presented a different procedural posture, different operative facts, and additional developments not before the court in South Loop 1. Because the authority issues presented in this involuntary Chapter 11 case were not identical to those resolved in South Loop 1, the Bankruptcy Court erred in treating

the earlier decision as effectively dispositive. Its reliance on South Loop 1, therefore, cannot support dismissal of this Chapter 11 case.

Additionally, the South Loop 1 ruling did not take into consideration the ruling by the Circuit Court of Cook County that approved the sale from Murphy and Cooper to White. It failed to give the preclusive effect of the state court ruling that was required.

III.     THE RECORD DOES NOT SUPPORT THE BANKRUPTCY COURT'S FINDINGS REGARDING REORGANIZATION OR TRUSTEE APPOINTMENT.

Even assuming the Bankruptcy Court correctly concluded that Hansen lacked authority to act on behalf of the Debtor, the record does not support the court's additional findings that the Debtor was incapable of progressing toward reorganization, that no reasonable likelihood existed that a plan could be proposed or confirmed, or that the appointment of a Chapter 11 trustee was not in the best interests of creditors and the estate. Those findings formed the foundation of the dismissal order, yet the record before the Bankruptcy Court does not justify such sweeping conclusions.

The Bankruptcy Court identified two grounds constituting cause under § 1112(b): first, that disputes at the Parent level were "paralyzing" the Debtor's ability to move forward; and second, that "[n]o reasonable likelihood of the proposal and confirmation of a plan exists." Neither conclusion follows from the record. (R. 5-4, 257, 261).

The record established only that a governance dispute existed over control of the Parent and that it had not yet been resolved. (R. 5-4, 257, 265). Indeed, the opinion repeatedly describes ongoing litigation among Parent members, competing claims of authority, and a state-court receivership proceeding that was interrupted by the filing of the involuntary petition. But the existence of a governance dispute does not establish that Chapter 11 relief is unattainable. As one

6

court recently observed, "a contested reorganization process does not necessarily lead to an inability to achieve a successful reorganization. Quite the opposite. The Bankruptcy Code anticipates disputed matters during the reorganization process, but promotes negotiation, compromise and settlement of claims." *In re 1600 Hicks Rd. LLC*, 649 B.R. 172, 182 (Bankr. N.D. Ill. 2023) (quoting *In re A&F Enters., Inc. II*, 742 F.3d 763, 769 (7th Cir. 2014)).

The Bankruptcy Court nevertheless treated the unresolved Parent dispute as effectively dispositive of the Debtor's reorganization prospects. That reasoning improperly conflates two separate questions. The first question is whether the Parent's ownership and management disputes remain unresolved. The second question is whether the Debtor can successfully proceed through Chapter 11. The existence of the former does not automatically establish the latter. Yet the opinion repeatedly assumes that because the Parent was deadlocked, no realistic path forward existed in bankruptcy. As noted earlier, courts must avoid defining issues at too "high level of generality." *In re Calvert*, 913 F.3d at 701. The record established the existence of a governance dispute but not that reorganization was impossible, that no confirmable plan could ever be proposed, or that no independent fiduciary could successfully administer the estate.

The record also does not support the Bankruptcy Court's conclusion that there was "[n]o reasonable likelihood" that a plan would be proposed or confirmed. (R. 5-4, 257, 261). In reaching that conclusion, the court effectively equated the existence of unresolved governance disputes with the absence of any realistic reorganization prospects. But Chapter 11 is designed to provide debtors with time to stabilize operations, negotiate with stakeholders, formulate a plan, and attempt reorganization. *1600 Hicks Rd. LLC* emphasized that the Bankruptcy Code "allows debtors time to stabilize, formulate, negotiate and propose their plans" and recognizes that disputes frequently exist during that process. *1600 Hicks Rd. LLC*, 649 B.R. at 182.

Indeed, Hospitality, the Debtor's principal secured creditor and the creditor with the largest apparent economic stake in the case, expressly argued that, at an earlier stage of the proceedings, "it was not possible to conclude that [the Debtor] had no reasonable prospect for an effective reorganization" and that the Bankruptcy Court's prediction that there was "no reasonable likelihood of the proposal or confirmation of a plan" was unsupported by the evidence. (Hospitality Br. at ¶27) Hospitality further noted that the motion to dismiss was filed only approximately sixty days after entry of the Order for Relief. *Id*. The opinion never meaningfully addresses why those concerns were incorrect.

The Bankruptcy Court's reasoning is particularly problematic because many of the deficiencies it cited were themselves consequences of the authority dispute. The opinion repeatedly states that Hansen lacked authority, that no authorized individual existed to guide the Debtor's affairs, and that internal disputes prevented effective action. (R. 5-4, 257, 261-262). It then relied on the resulting lack of progress as evidence that reorganization was futile. That reasoning is circular. If unresolved authority disputes prevented management from advancing the case, the resulting lack of progress confirms the existence of those disputes; it does not establish that reorganization could not occur under different management or through the appointment of an independent fiduciary. Where a court concludes that existing management cannot effectively guide a debtor through Chapter 11, Congress has authorized the appointment of a trustee under § 1104 rather than requiring dismissal.

That flaw becomes even more apparent when the opinion's trustee analysis is examined. The Bankruptcy Court repeatedly found that the Parent was incapable of functioning, that disputes among members remained unresolved, that Hansen lacked authority, and that those circumstances were preventing the Debtor from moving the case forward. Those findings precisely describe the

8

type of management paralysis that frequently leads bankruptcy courts to appoint an independent fiduciary. Section 1104 exists because Chapter 11 cases sometimes proceed despite dysfunctional management. As the Third Circuit explained, § 1104(a)(2) establishes a "flexible standard" permitting trustee appointment when doing so serves "the interests of the creditors, equity security holders, and other interests of the estate." *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989). Yet the Bankruptcy Court concluded that the appointment of a Chapter 11 trustee was not in the best interests of creditors and the estate.

The rationale offered for rejecting a trustee does not withstand scrutiny. The Bankruptcy Court emphasized that Hospitality was receiving adequate protection payments, that other creditors had not actively participated in the proceedings, and that a trustee would impose additional expense on the estate. (R. 5-4, 257, 266). But none of those considerations explains why a trustee would be unable to address the very problems that the Bankruptcy Court believed justified dismissal. The question was not whether a trustee would be cost-free, but whether a trustee could provide a path forward where the existing management structure could not.

Moreover, the parties most directly affected by the estate's administration did not advocate dismissal as the preferred outcome. Dodd's motion expressly sought appointment of a trustee as an alternative to dismissal. Hospitality likewise opposed dismissal and argued that a Chapter 11 trustee should be appointed. (Hospitality Br. at ¶28) Yet the Bankruptcy Court selected the only option that terminated the Chapter 11 process entirely.

At its core, the opinion establishes only that the Debtor suffered from severe governance disputes and lacked effective management. It does not establish that reorganization was impossible, that no plan could ever be proposed, or that the appointment of a trustee would be futile. To the contrary, the findings relied upon by the Bankruptcy Court demonstrate why an

9

independent fiduciary may have been uniquely positioned to move the case forward. Accordingly, even if this Court agrees with the Bankruptcy Court's conclusions regarding Hansen's authority, the findings supporting dismissal under § 1112(b) should not be sustained, and the dismissal order should be reversed.

IV.   DODD'S CHARACTERIZATIONS OF THE PROCEEDINGS IN THE STATE COURT IS NOT SUPPORTED BY THE FACTS.

Dodd has argued that the sale of the interests of Murphy and Cooper to White, which was approved in the Circuit Court of Cook County, could not be used as collateral estoppel to argue that the sale gave White sufficient authority to modify the operating agreement and sell her interest pursuant to the Restrictive Stock Agreement. Dodd claims that the fact that he did not object to the sale and did not participate in the sale was not a consent to the sale. This argument however does not make sense. Dodd does not deny that he knew of the sale and was offered an opportunity to participate in the sale. His attorney was made aware of the sale and the court date to approve the settlement and dismissal of the state court case, which was the effectuated by the sale of Murphy and Cooper's interests to White. Dodd somehow intimates that his knowledge and decision to neither participate in the sale or object to the sale in any way is not a consent to the sale. He had every opportunity to object to the sale and to participate, which would have raised his interest to 50%, but he chose not to do either. He cannot come back years later and argue that he knew all about the sale, but because he did not tacitly state that he approves it, it is somehow void. This would allow Dodd to create the very authority issue he used and continues to use to impede the reorganization of the Debtor. Dodd was a party to the litigation and was aware of the proceedings and did not raise any objection. Thus, he is bound by the approval of the sale that sold White the interests of Murphy and Cooper.

The Restrictive Stock Agreement that set up a procedure for the sale of a party's interests

that allowed for notice, participation and a limit on the amount of time to choose to participate, was specifically designed as a way to allow a sale of an interest without all parties' approval. That is exactly what happened here. Dodd chose not to participate, which allowed White to purchase the interests of Murphy and Cooper.

Furthermore, Dodd has cited no provision that makes that sale only a sale of an economic stake, rather than a sale of the membership interest, as Dodd would have the Court believe. This was a sale of 15% percent of the interest of CSLH to White, who was already a member of CSLH. This gave her a 57.5% interest in CSLH, which as discussed in the Appellant's Brief, was enough to amend the operating agreement to change the manager and sell her interest to Holdings. If the Restrictive Stock Agreement had not been complied with, Dodd would arguably be correct in his assertions that the membership interest had not been sold. White's compliance with the restrictive stock agreement, coupled with Dodd's non-participation and failure to object in any way, authorizes the sale and the actions taken after the sale.

Dodd makes the final argument that collateral estoppel does not apply to the approval by the Circuit Court of Cook County of the sale. Dodd admits that he was a party to the state court case and was involved in the entry of certain orders. While Dodd argues that there is no prior adjudication on the same issue and a final judgment having been entered, that simply ignores the rulings in the Circuit Court of Cook County. As discussed previously, the settlement agreement is not titled "settlement agreement", rather it is the Membership Interest Purchase Agreement. A motion was filed in the Circuit Court of Cook County to approve the "settlement agreement", which was approved. Additionally, the Circuit Court of Cook County ruled again that the Membership Interest Purchase Agreement was enforceable. As discussed in the Appellant's Brief the Circuit Cook of Cook County further recognized the settlement by entering an order

11

enforcing the "settlement agreement". See copy of Motion to Enforce Settlement Agreement attached as Exhibit N to the Supplemental Response to Motion to Dismiss (R. 5-2, 436) and the Order Granding Motion to Enforce attached as Exhibit O to the Supplemental Response to Motion to Dismiss (R. 5-3, 36). If the order that approved the settlement by approving the Membership Interest Purchase Agreement was not a final order, it would not have been able to be used to enforce the "settlement agreement" and allow Murphy and Cooper to obtain a judgment against White. Dodd's argument fails when the Circuit Court of Cook County's rulings are reviewed.

## **CONCLUSION**

For the foregoing reasons, the Debtor requests that the Memorandum and Opinion of the Bankruptcy Court be vacated and the bankruptcy case be reinstated. The Court's dismissal for failure to have corporate authorization to proceed with the bankruptcy case should be reversed and it should be determined that Todd Hansen has authority to act on behalf of the Debtor in the bankruptcy case. In the alternative, the Memorandum and Opinion of the Bankruptcy Court should be vacated and the bankruptcy case be reinstated for the entry of an order appointing a Trustee.

Dated: July 2, 2026

**GOLDSTEIN & MCCLINTOCK LLLP**
By: */s/ Jeffrey C. Dan*

Jeffrey C. Dan (Atty. No. 6242750)
Harley J. Goldstein (Atty. No. 6256010)
111 W. Washington Street, Suite 1221
Chicago, IL 60602
Telephone: (312) 337-7700
Facsimile: (312) 277-3315
jeffd@goldmclaw.com
harleyg@goldmclaw.com

ATTORNEYS FOR DEBTOR/APPELLANT
CHICAGO SOUTH LOOP HOTEL OWNER,
LLC

12